COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Malveaux and Senior Judge Frank

LESLIE ANN SAWYERS

                                         MEMORANDUM OPINION*

v.       Record No. 1320-20-3                      PER CURIAM
                                               JUNE 1, 2021

ROANOKE CITY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

(Phillip R. Lingafelt; Glenn, Feldmann, Darby & Goodlatte, on
brief), for appellant. Appellant submitting on brief.

(Timothy R. Spencer, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Brooke Rosen, Guardian *ad litem* for the minor child;
Woods Rogers, on brief), for appellee. Appellee and Guardian *ad
litem* submitting on brief.

Leslie Ann Sawyers (mother) appeals the circuit court's order terminating her parental rights

to her daughter, V.S., and approving the foster care goal of adoption. Mother argues that the circuit

court erred in denying her motions to strike and further asserts that the evidence was insufficient to

support the termination of her parental rights under Code § 16.1-283(B) and (C)(2). In addition,

mother argues that the circuit court erred in finding that it was in the best interests of V.S. to

terminate mother's parental rights. Mother also contends that the circuit court erred in finding that

the Roanoke City Department of Social Services (the Department) made reasonable efforts to

reunite V.S. with her. Lastly, mother asserts that the circuit court erred in finding that adoption was

the appropriate foster care goal for V.S. and that adoption was in V.S.'s best interests. Upon

---

\* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reviewing the record and briefs of the parties, we conclude that the circuit court did not err. Accordingly, we affirm the decision of the circuit court.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother and David Sawyers (father) are the biological parents to V.S.[2] The Department first became involved with the family in January 2016, when the police investigated a domestic disturbance at the residence. V.S. was approximately one month old. The Department and parents entered into a safety plan, and mother and V.S. lived temporarily with the maternal grandmother.

A few days later, the parents and V.S. resumed living together. The Department was concerned about the volatile relationship between mother and father, as well as mother's mental health issues that were not being addressed. Mother had been diagnosed with bipolar disorder and depression, and she would not take her medication regularly. Since V.S.'s birth, the police had been called several times because of the parents' arguments. The Department expressed its

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Because of father's death on March 14, 2021, this Court granted the motion filed by father's counsel requesting the withdrawal of father's appeal of the circuit court's order terminating his parental rights and approving the foster care goal of adoption. See D. Sawyers v. Roanoke City Dep't of Soc. Servs., Record No. 0125-21-3 (Va. Ct. App. May 4, 2021).

concern to the parents about V.S.'s development as she witnessed the verbal altercations between mother and father, yet the parents continued to argue in front of her.

The Department subsequently sought and obtained a protective order for V.S., who was placed with the maternal grandmother. The City of Roanoke Juvenile and Domestic Relations District Court (the JDR court) ordered mother and father to participate in psychological and parental capacity evaluations and cooperate with the Department and its recommended services. The JDR court also adjudicated that V.S. was abused or neglected. The Department's investigation led to a founded level one disposition for physical neglect and inadequate supervision against mother and father.

In May 2016, mother participated in a psychological and parenting capacity evaluation with Dr. Klaire Mundy. Dr. Mundy found mother to have significant cognitive deficits, which limited her ability to learn from her mistakes. Given mother's intellectual challenges, Dr. Mundy questioned mother's ability to "function socially or interpersonally in the world around her." Mother also demonstrated a "complete lack of insight into her current situation, her emotional experiences, and her historical pattern of behavior." Mother tended to blame father and others for V.S.'s removal. Dr. Mundy described mother's "history of chaos, violence, and interpersonal disruption" as "highly concerning." Dr. Mundy diagnosed mother with "mild to moderate intellectual developmental disorder, post traumatic stress disorder abuse related, bipolar one disorder by history[,] . . . impulse control disorder and dependent personality disorder with paranoid features." Dr. Mundy was concerned that mother was incapable of keeping herself and her daughter safe and did not recommend mother as the primary custodian for V.S.

In September 2016, father admitted to the Department that he had been alone unsupervised with V.S., which was a violation of the child protective order. As a result of

father's admission, father's marijuana use, the continual domestic violence, and inadequate supervision, the Department filed for an emergency removal of V.S. from the parents' home and V.S. entered foster care. The Department referred mother and father to parenting classes, domestic violence classes, individual counseling, mental health skill builders, and random drug screens; mother and father cooperated with and completed the services. The Department also offered them visitation, which expanded to a trial home placement.

In January 2018, V.S. was returned to mother's and father's home. The Department provided ongoing services, including in-home services and rental assistance, to the family. Father reported that they could not control V.S.'s behaviors because she would not take naps, would eat her own feces, and would eat spoonfuls of flour, sugar, or salt if within her reach.

In January 2019, the family received services from a home visiting agency that provided health and parenting education. After screening V.S., the assigned case manager determined that she had behavioral concerns and developmental delays. V.S. was referred for speech services, and the case manager worked with V.S. and her parents on her behavior. The case manager, however, did not believe that mother and father were understanding and implementing the skills taught during the sessions.

Beginning in January 2020, V.S. qualified for intensive in-home services and participated in play therapy to work through her feelings and teach her strategies to calm herself down. V.S. had "significant tantrums" that involved "extreme outbursts and screaming and crying." The parents reported that the neighbors had called the police due to V.S.'s loud yelling. The therapist encouraged mother and father to participate in V.S.'s therapy sessions; however, they tended to observe, rather than participate, in the sessions. The therapist did not see any improvement in V.S.'s behaviors between January and April 2020, and she doubted that the family worked on the skills together outside of the sessions.

By April 2020, the Department had received multiple reports of domestic violence, substance abuse in the home, and inadequate supervision. Father admitted to smoking marijuana, and mother and father acknowledged that they had been involved in a domestic incident that required police intervention. Mother also continued to have difficulties with her medication management. The Department removed four-year-old V.S. and placed her in foster care on April 15, 2020.

The reasons for the removal in April 2020 were the same reasons for the removal in 2016. The Department suggested a foster care goal of adoption. Given the extensive services previously offered the family, there were no new services available to benefit them. The Department, though, offered them visitation, which had to be virtual due to the pandemic.

The JDR court adjudicated that V.S. was abused or neglected. On June 19, 2020, the JDR court entered the dispositional order, approved the foster care goal of adoption, and terminated mother's parental rights. Mother appealed the JDR court's rulings.

On October 26, 2020, the parties appeared before the circuit court. The Department emphasized that it had "exhausted a lot of [its] options and [its] services." The issues at the time of the second removal were the same as the issues at the time of the first removal.

Dr. Mundy testified before the circuit court. Dr. Mundy explained that the testing results and her conclusions from the 2016 evaluation likely would not change because mother's "intellectual deficits [were] so extreme." Dr. Mundy further stated that mother would "continue to need ongoing support" and should not be the primary custodian of V.S. When asked about the effects of the parents' verbal altercations in front of V.S., Dr. Mundy testified that "the development of the infant brain is significantly impacted by verbal aggression at home, even if it's outside of the room of the child." Dr. Mundy further explained that a toddler or young child

can experience deficits cognitively, intellectually, and neurologically by being in a home where there are verbal altercations.

The Department presented evidence that V.S. had "significant" special needs, including impulsiveness, hyperactivity, defiance, inability to self-soothe, sleep disturbances, and aggression. V.S.'s speech had improved since she entered foster care; however, she continued to struggle behaviorally. In addition, after entering foster care in 2020, V.S. required extensive dental work that resulted in caps being added on her back teeth and two teeth being pulled because they were rotting.

Once the Department presented its evidence, mother moved to strike, which the circuit court denied. Father testified that in early 2020, mother stopped taking her medication, and her "mental state was getting worse, deteriorating." After V.S. entered foster care, mother and father separated. Mother obtained her own apartment. Mother testified that at the time of the circuit court hearing, she was receiving mental health treatment and taking her medication. Mother admitted that when she did not take her medication, she can be "mean." Mother testified that she was capable of taking care of V.S. and asked that her parental rights not be terminated.

At the conclusion of all the evidence, mother renewed her motion to strike, which the circuit court denied. After hearing the parties' arguments, the circuit court found that it was in V.S.'s best interests to terminate mother's parental rights under Code § 16.1-283(B) and (C)(2) and approve the foster care goal of adoption. On November 12, 2020, the circuit court entered an order memorializing its rulings. This appeal followed.

ANALYSIS

Mother challenges the circuit court's ruling terminating her parental rights to V.S. and approving the foster care goal of adoption. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its

- 6 -

determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

*Termination of parental rights*

Mother argues that the circuit court erred in denying her motions to strike. She contends the evidence was insufficient to support a termination of her parental rights under Code § 16.1-283(B) or (C)(2). Mother also asserts that the circuit court erred in finding that the Department made reasonable efforts to reunite V.S. with her.

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks *in futuro* . . . ." C. Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 375, 416 (2012) (quoting Jenkins v. Winchester Dept. of Soc. Services, 12 Va. App. 1178, 1183 (1991)). "[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to

substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63 (2003)). "Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" C. Farrell, 59 Va. App. at 425 (quoting Winfield v. Urquhart, 25 Va. App. 688, 695-96 (1997)); see also Geouge v. Traylor, 68 Va. App. 343, 375 (2017).

Here, the Department presented extensive evidence regarding the family's history of domestic violence and mother's mental illness. The JDR court had adjudicated that V.S was abused or neglected three times, namely March 21, 2016, September 16, 2016, and May 22, 2020. In 2016, the Department had removed V.S. from the parents' custody and provided numerous services to the parents. In 2018, V.S. was returned to mother's and father's custody. The Department, however, had to remove V.S. again in April 2020, after it received several reports of domestic violence, father's admission to marijuana use, and mother's cessation of her medication.

V.S. has a history of emotional and behavioral concerns that the parents could not handle. Despite in-home services and therapy, V.S. did not improve between January and April 2020. Mother did not implement the skills being taught by the therapist, and the parents were continuing to argue. Dr. Mundy explained that a child exposed to verbal arguments can be negatively affected. The evidence supported the circuit court's finding that V.S. was neglected in mother's care, which caused a "serious and substantial threat to [her] life, health or development." Code § 16.1-283(B)(1).

Furthermore, "Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been provided to a parent. Nothing in Code § 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to

termination under subsection B." Toms, 46 Va. App. at 268. The Department previously had provided numerous services to the parents, including mental health support services, marriage counseling, psychological evaluations, parenting capacity evaluations, transportation assistance, financial assistance, domestic violence classes/services, parenting classes, individual counseling, psychiatric services and medication management, visitation, early intervention services for V.S., in-home counseling services, and child developmental classes. The social worker testified that the Department had "exhausted" its services, yet there was no "positive change." Contrary to mother's arguments, the Department was not required to provide additional services.

Based on the record, the circuit court did not err in denying mother's motions to strike and terminating her parental rights under Code § 16.1-283(B). "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." Castillo, 68 Va. App. at 574 n.9; see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Because we find that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B), we, therefore, do not need to reach the question of whether mother's parental rights should also have been terminated under Code § 16.1-283(C)(2).

*Best interests of the child*

Mother argues that the circuit court erred in finding that termination of her parental rights was in V.S.'s best interests. "The trial court, acting as fact finder, retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Eaton v. Washington Cnty. Dep't of Soc. Servs., 66 Va. App. 317, 331 (2016) (quoting Farley v. Farley, 9 Va. App. 326, 328 (1990)); see also Castillo, 68 Va. App. at 558.

"'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Eaton, 66 Va. App. at 331 (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)).

V.S. had spent almost half of her life in foster care. Mother had a history of mental illness and noncompliance with her medication. Dr. Mundy concluded that mother's "intellectual, psychiatric, and interpersonal concerns lay a foundation for problematic parenting outcomes that include a lack of insight, poor decision-making, limited executive functioning, poor independent interaction, and disruptive social [s]kills and communication." Dr. Mundy feared that mother could not keep V.S. safe and opined that mother should not be the primary custodian of V.S. At the time of the circuit court hearing and despite all the services provided, mother still was not in a position to care for V.S. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). The circuit court did not err in finding that termination of mother's parental rights was in V.S.'s best interests.

*Foster care goal of adoption*

With respect to mother's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

<u>Affirmed.</u>